UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLINTON GROUP, INC., <br><br> Plaintiff, <br><br> -against- <br><br> NAVESINK INTERNATIONAL, LLC and GONTRAN DE QUILLACQ, <br><br> Defendants. | 1:24-cv-05195 (ALC) <br><br> **OPINION & ORDER** |

**ANDREW L. CARTER, JR., United States District Judge**

Plaintiff Clinton Group, Inc. brings this action to recover damages under two state tort claims: fraudulent inducement and exposure to litigation as a result of a third-party tort. *See* ECF No. 1. Plaintiff brings this complaint against Defendants Gontran de Quillacq and Navesink International, LLC. *See id.* Defendants have filed a motion to dismiss the complaint, arguing that: (1) Plaintiff is precluded from bringing its claims, (2) Plaintiff fails to state a claim for fraud, and (3) Plaintiff's damages are not recoverable. *See* ECF Nos. 13, 13-1. For the reasons set forth below, the motion to dismiss is **DENIED**.

## BACKGROUND

### I. Factual History

Plaintiff Clinton Group, Inc. ("Plaintiff" or "Clinton") is a Delaware corporation with its principal place of business in New York. *See* ECF No. 1 ¶ 3 (hereinafter "Compl."). Gontran de Quillacq ("de Quillacq") is an individual residing in New Jersey. Compl. ¶ 4. Navesink International, LLC ("Navesink," together with de Quillacq, "Defendants") is a New Jersey limited liability corporation owned by Elizabeth de Quillacq, a resident of New Jersey. Compl. ¶ 5.

1

In March of 2017, de Quillacq emailed an employee at Clinton and asked whether Clinton would be interested in forming a long-term partnership and starting a hedge fund with him. Compl. ¶¶ 13-17. In that email, de Quillacq made no reference to the fact that he was a professional recruiter and that Defendant Navesink was a recruitment agency. Compl. ¶¶ 19, 21-22. Clinton agreed to meet with de Quillacq, and at that meeting, de Quillacq continued to conceal his profession, although he referenced "that in the past he had done some recruiting between jobs." Compl. ¶¶ 35, 37-39. At the meeting, de Quillacq proposed that he join Clinton with his team of four to five others and start a hedge fund. Compl. ¶ 41. After the meeting, de Quillacq sent an email introducing Clinton to his other "team members." Compl. ¶ 42. At the bottom of that email, in small-type, hyperlinked text, de Quillacq included the sentence: "Unless we have a contract in place, you agree to our legal terms." Compl. ¶ 43. The link was to Navesink's website. Compl. ¶ 44. There was no contract for recruitment services attached or ever executed between Clinton and Defendants. Compl. ¶¶ 45-47.

In following pitch meetings with Clinton, de Quillacq never communicated that he would seek to recover a recruitment fee for introducing his "team members," if Clinton subsequently hired them. Compl. ¶¶ 48-53. In July 2017, Clinton offered de Quillacq and his "team members" employment contracts, relying on de Quillacq's prior representations that he was not a recruiter. Compl. ¶¶ 66-73. De Quillacq was aware that if he shared the true nature of his business, Clinton would likely revoke the offers, so he continued to conceal that he planned to seek a recruitment fee. Compl. ¶¶ 65-66, 74-75. De Quillacq and two "team members" accepted Clinton's offers and were salaried employees as of July 10, 2017. Compl. ¶¶ 76-78. Clinton employed and paid de Quillacq's salary for a total of four months, after which he was terminated for failing to meet

fundraising goals. Compl. ¶¶ 79, 81-82. In January 2018, de Quillacq emailed Clinton and inquired about severance pay. Compl. ¶ 83. He did not mention a recruitment fee. *Id.*

In September 2018, Navesink sued Clinton in the State Supreme Court for New York County for breach of contract to recover its recruitment fee. Compl. ¶¶ 84-85. After years of litigation, the Honorable Judge Debra James granted Clinton's motion for summary judgment and dismissed all claims against it. Compl. ¶ 88; *see also* ECF No. 13-2 ("State Court Order"). In that order, the State Court made several factual findings, including that de Quillacq's communications never represented that he was a recruiter and that Navesink never alerted Clinton about its recruitment agreement. Compl. ¶¶ 93, 98. Navesink's state complaint was dismissed with "costs and disbursements" to Clinton. State Court Order at 2.

## II.    Procedural History

On July 10, 2024, Plaintiff Clinton filed its complaint, initiating this action. *See* ECF No. 1. Clinton sues Defendants Navesink and de Quillacq under two causes of action: fraud in the inducement of a recruitment agreement and exposure to litigation caused by de Quillacq's fraud. Compl. ¶¶ 101-139. Plaintiff seeks $133,728.00—its total litigation expenses from defending against the state complaint—as compensatory damages, along with punitive damages and interest. Compl. at 22.

Defendants filed a joint motion to dismiss the complaint on August 22, 2024. *See* ECF No. 13-1 ("Def. Br."). Defendants argue that the complaint should be dismissed on three bases: (1) Plaintiff is precluded from bringing its claims, (2) Plaintiff fails to state a claim for fraud, and (3) Plaintiff's damages are not recoverable. *See id.* Plaintiff filed a response in opposition to the motion on September 25, 2024. *See* ECF No. 15 ("Opp. Br."). Defendants submitted their reply brief on October 10, 2024. *See* ECF No. 16 ("Reply").

3

**LEGAL STANDARD**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotations omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663 (citing *Twombly*, 550 U.S. at 555). Indeed, deciding whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678–79 (quoting *Twombly*, 550 U.S. at 570). In addition to the factual allegations in the complaint, a court may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by

reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

## DISCUSSION

### I. Claim Preclusion

"Under New York law, the doctrine of *res judicata* gives binding effect to the judgment of a court of competent jurisdiction," preventing re-litigation of the claims or defenses which were raised or could have been raised. *Cameron v. LR Credit 22, LLC*, 998 F. Supp. 2d 293, 297–98 (S.D.N.Y. 2014) (quoting *Watts v. Swiss Bank Corp.*, 265 N.E.2d 739, 743 (1970)) (internal quotations omitted). *Res judicata* "bars later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *EDP Med. Comput. Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (internal quotation and alteration omitted).

"New York is a permissive counterclaim jurisdiction." *Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 36 N.Y.S.3d 11, 14 (App. Div. 1st Dep't 2016), *aff'd*, 31 N.Y.3d 64 (2018). "New York's permissive counterclaim rule preserves the right of a party to bring a claim that it could have brought as a counterclaim in a prior action, as long as doing so would not 'impair the rights or interests established in the first action.'" *Guido v. Wells Fargo Bank, N.A.*, No. 16-CV-1568 (VSB), 2017 WL 5515859, at *3 (S.D.N.Y. Mar. 21, 2017), *aff'd*, 699 F. App'x 54 (2d Cir. 2017) (quoting *Henry Modell & Co. v. Minister, Elders & Deacons of Reformed Protestant Dutch Church of N.Y.C.*, 68 N.Y.2d 456, 462 n.2 (1986)). "[T]herefore, *res judicata* does not bar claims that could have been raised by [a party] as counterclaims in a previous action but were not actually raised." *Cameron*, 998 F. Supp. 2d at 298; *see also RA Glob. Servs., Inc. v. Avicenna Overseas Corp.*, 843 F. Supp. 2d 386, 390 (S.D.N.Y. 2012) ("The fact that a plaintiff may have asserted the

5

subject matter of his present claim as a defense to a former action does not foreclose the maintenance of his present action on the ground of *res judicata*." (citing *Lukowsky v. Shalit*, 110 A.D.2d 563 (App. Div. 1st Dep't 1985))). "To hold otherwise would have the effect of rendering New York a compulsory counterclaim jurisdiction, because any counterclaims not asserted would be barred in subsequent actions." *Renois v. WVMF Funding, LLC*, No. 20-CV-9281-LTS, 2024 WL 1313492, at *7 (S.D.N.Y. Mar. 27, 2024); *but see Almazon v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 19-CV-4871-VEC, 2020 WL 1151313, at *11 (S.D.N.Y. Mar. 9, 2020) ("[T]he Second Circuit has interpreted broadly New York's *res judicata* law, construing it to apply to all claims that 'could have been raised' in a prior proceeding." (citing *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997))).

Clinton and Defendants do not challenge that the State Court Order was a final judgment on the merits, nor that Defendant Navesink is unable to re-litigate the claims it brought in the state court action before this Court. Their only disagreement pertains to whether *res judicata* precludes Clinton's claims, as it could have raised them as counterclaims in the state court action. *See* Def. Br. at 3-7; Opp. Br. at 5-9. The Court recognizes that Clinton may have been able to bring its claims as counterclaims to the state complaint. Nevertheless, given that the counterclaims would have been permissive, and that Defendants do not argue that their adjudication would "impair the rights or interests established in the first action," the Court finds Clinton's claims are not precluded. *See Cameron*, 998 F. Supp. 2d at 298.

II. **Claim for Fraudulent Inducement**

Allegations of fraud are subject to a heightened pleading standard under the Federal Rules. *See* Fed. R. Civ. P. 9(b) (a plaintiff must allege the circumstances constituting fraud "with particularity"). To successfully allege a fraud claim in the state of New York, a plaintiff must

6

include: "[1] a false representation of material fact, [2] knowledge by the party who made the representation that it was false when made, [3] justifiable reliance by the plaintiff, and [4] resulting injury." *Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006). In compliance with Rule 9(b), a plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007); *see also Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006) ("Conclusory pleadings on information and belief are inadequate as a matter of law to survive a motion to dismiss" unless they are "accompanied by a statement of facts upon which the belief is founded." (internal quotation marks and citation omitted)).

To state a claim for fraudulent inducement under New York law, a plaintiff must allege: "a representation of fact, which is untrue and either known by defendant to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, and which causes injury." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 490 (S.D.N.Y. 2017) (quoting *Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 104 (2d Cir. 2001)). Claims for fraudulent inducement can also be based on material omissions. *See Barron Partners, LP v. LAB123, Inc.*, 593 F. Supp. 2d 667, 670 (S.D.N.Y. 2009). However, an omission can only serve as the basis of a fraudulent inducement claim where a defendant has a duty to disclose, "which can arise where there is a confidential or fiduciary relationship between the parties." *Id.* (internal citations omitted).

"[A]lthough Rule 9(b) permits knowledge to be averred generally, [courts] have repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent

7

intent." *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (internal quotations omitted). A strong inference "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006). Strong circumstantial evidence includes a showing that defendants "(1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 199 (2d Cir. 2009) (quoting *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000)) (internal quotation marks omitted).

Defendants argue that Clinton failed to state a claim for fraud because the complaint did not (1) allege specific misrepresentations by Defendants, (2) make allegations concerning fraudulent intent, or (3) assert damages resulting from the fraud. *See* Def. Br. at 7-10. The Court takes each argument in turn.

     *i.*    *Specific Misrepresentations*

Clinton identifies several specific misrepresentations alleged in the complaint, including de Quillacq's statements that "he was not seeking to do business with Clinton Group as a recruiter," Compl. ¶ 40, and "his purpose in approaching Clinton Group was to raise money to start a hedge fund," *id.* ¶ 50. *See* Opp. Br. at 10. Defendants argue that these allegations cannot be misrepresentations given the fact that Clinton ended up extending employment offers to de Quillacq and his "team." *See* Def. Br. at 9.

8

The Court is unconvinced by Defendants' argument. Clinton alleges that those misrepresentations by de Quillacq are exactly what led it to extend the employment contracts. *See* Compl. ¶ 66 ("Clinton Group would not have [extended contracts] had [de Quillacq] revealed that Navesink would seek a placement fee if Clinton Group hired the team members as employees."). While there may have been a mutual understanding between Clinton and de Quillacq that they were no longer solely discussing an investment opportunity, the fact that de Quillacq maintained he was not a recruiter was still relevant to Clinton's hiring decision, as it allegedly relied upon this misrepresentation in extending the job offers. *See* Compl. ¶ 67 ("In making its July 7, 2017 employment offer, the Clinton Group relied on de Quillacq's false representation that he was solely approaching it as a member of a team seeking start-up investment funding in the hedge fund industry."). The Court finds that the complaint alleges specific misrepresentations with sufficient detail to satisfy Rule 9(b), given the complaint's identification of the speaker, date, location, and fraudulent information contained therein.[1] *See Nakahata*, 723 F.3d at 197.

    ii.    *Fraudulent Intent*

As stated previously, a strong inference of fraudulent intent may be established through circumstantial evidence that defendants benefitted from the fraud or knew that their statements were inaccurate. *See ECA*, 553 F.3d at 199. Defendants argue that the complaint "does not make allegations concerning fraudulent intent." *See* Def. Br. at 9. Defendants rely on *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Company* to make this argument. 478 Fed. App'x. 679 (2d Cir.

---

[1] For clarity, given these specific misrepresentations, Clinton need not rely upon any material omissions made by de Quillacq to state its claim. *See* Opp. Br. at 11 ("Additionally, 'a fraud cause of action may also be premised on acts of concealment where the defendant had a duty to disclose material information.'" (quoting *Meisel v Grunberg*, 651 F Supp 2d 98, 118 (SDNY 2009)). In light of this, the Court declines to consider whether de Quillacq owed Clinton any duty to disclose.

2012). The Second Circuit in *Landesbank* found that the complaint did not "ascribe to Goldman or TCW any particular motive for committing fraud beyond a general profit motive common to all corporations, which does not suffice[,]" and upheld the district court's dismissal. *Id.* at 681.

But Clinton's allegations are not "general" to the same extent. On the contrary, Clinton's complaint alleges that de Quillacq had a specific, particular motive: "to establish a contract for recruiting services by repeatedly and falsely representing that his sole purpose in meeting with Clinton Group would be to solicit investment funding for a start-up hedge fund to be managed by his team." Compl. ¶ 113; *see also id.* ¶ 71 ("After receiving the July 7, 2017 employment offer, de Quillacq knew, correctly, that if he did not continue to conceal that Navesink would seek a placement fee if Clinton Group hired the team members as employees, Clinton Group would not enter any transaction."). The complaint also alleges that, "[a]s de Quillacq later correctly testified, if he had failed to conceal that Navesink would seek a placement fee if Clinton Group hired the team members as employees, Clinton Group would not have made its July 7, 2017 employment offer." Compl. ¶ 70.

These facts constitute strong circumstantial evidence that Defendants (1) "benefitted in a concrete and personal way from the purported fraud" in procuring employment contracts from Clinton and (2) "knew facts or had access to information suggesting that their public statements were not accurate" given that de Quillacq was attempting to establish a recruitment contract, despite his statements otherwise. *See ECA*, 553 F.3d at 199. Such circumstantial evidence satisfies Clinton's obligation to plead fraudulent intent. *See Lerner*, 459 F.3d at 290–91 (2d Cir. 2006).

      *iii.*    Damages

Under the first cause of action in the complaint, "Fraud in the Inducement," Clinton alleges that it "was injured to the extent of all legal fees and expenses incurred in defending against

10

Navesink's baseless and wrongful lawsuit." Compl. ¶ 121. Clinton references this language in response to Defendants' argument that the complaint "does not assert any damages which arose from the alleged fraud." Def. Br. at 9; *see* Opp. Br. at 11. Damages, including attorneys' fees from related actions, are potentially recoverable in an action for fraud. *See The Ltd., Inc. v. McCrory Corp.*, 683 F. Supp. 387, 393 (S.D.N.Y. 1988). Therefore, Clinton's claim for fraud adequately alleges damages.

Accordingly, Defendants' motion to dismiss Clinton's claim for fraudulent inducement is **DENIED**.

### III. Claim for Attorneys' Fees

A plaintiff may not recover twice for the same injury. *See, e.g.*, *Ostano Commerzanstalt v. Telewide Systems*, 880 F.2d 642, 649 (2d Cir. 1989) (finding that double recovery puts plaintiffs in better position than had they not been injured). "When a plaintiff receives a payment from one source for an injury, defendants are entitled to a credit of that amount against any judgment obtained by the plaintiff as long as both payments represent common damages." *Phelan v. Local 305 of United Ass'n of Journeymen*, 973 F.2d 1050, 1063 (2d Cir. 1992) (citing *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989)).

Defendants argue that the State Court Order's award of "costs and disbursements" to Clinton renders its current action for litigation expenses improper. *See* Def. Br. at 10–11. But neither the State Court Order nor Plaintiff's pleadings assert that Clinton sought or recovered all litigation expenses, including attorneys' fees, in the state court action. In fact, Clinton maintains that "[a]ttorneys' fees were neither sought nor granted, in the prior action." Opp. Br. at 14. Accepting the allegations of the complaint as true and construing them in Plaintiff's favor, the Court finds that Clinton has alleged sufficient facts in support of its claim for attorneys' fees that

11

would entitle it to relief. *See Solvent Chem. Co. ICC Indus. v. E.I. Dupont De Nemours & Co.*, 242 F. Supp. 2d 196, 212 (W.D.N.Y. 2002) ("[I]t cannot be said at present that 'it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim [for attorney's fees] that would entitle [them] to relief.'" (quoting *Conley v. Gibson*, 355 U.S. 41, 46 (1957), *abrogated by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007))). It would be "premature at this stage to conclude that the potential for Plaintiff's double recovery warrants dismissal" of its complaint. *New York v. Hickey's Carting, Inc.*, 380 F. Supp. 2d 108, 116 (E.D.N.Y. 2005). Defendants' motion to dismiss on this basis is, therefore, **DENIED**.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is hereby **DENIED**. This case will be referred to Magistrate Judge Katharine H. Parker for general pre-trial matters. The Clerk of Court is respectfully directed to terminate ECF No. 13.

**SO ORDERED.**

**Dated:** **March 21, 2025**
**New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**