# EXHIBIT F

# Fee Agreement

This permanent placement fee agreement (the "agreement") is made and entered into as of [Date] by and between [Company] at [Address] or any subsidiary or affiliate of [Company] ("Company") and Navesink International LLC at 444 River Road, Fair Haven, NJ 07704, USA ("Navesink Intal") (each a "Party", together the "Parties").

## A. Services

[Company] hereby engages Navesink Int[al] to refer candidates to fill positions for employment by [Company], as such positions are identified by authorized [Company] personnel.

Navesink Int[al] hereby accepts such engagement. Navesink Int[al] agrees to use its best efforts to obtain candidates to fill such positions. Navesink Int[al] agrees to exercise due care in referring candidates, including interview, appropriate investigation of the background, work history and investment experience / approach if available. Navesink Int[al] agrees to provide principals and other personnel available for telephone conference or candidate interviews when scheduled.

[Company] agrees to provide Navesink Int[al] with feedback on candidates deemed suitable for [Company] to aid in the outreach's refinement.

## B. Fees

[Company] hereby agrees to compensate Navesink Int[al] for the work it performs in sourcing, interviewing, screening and presenting candidates to [Company] as follows.

1. **Portfolio Manager, Trader, Senior Research Analyst, Senior Quant Analyst and other Senior Executive Positions:**

   For candidates that are referred to [Company] by Navesink Int[al] to fill Portfolio Manager and Senior Executive positions, [Company] shall pay Navesink Int[al] 25% of the placed candidate's total first year compensation as follows:

   a) An initial amount ("initial amount") equal to the greater of (a) $50,000 (fifty thousand US dollars) or (b) twenty-five percent (25%) of all compensation(s) to be received by the portfolio manager, trader, senior research analyst, senior quant analyst or senior executive during the first twelve (12) months following start date, including (i) base salary, (ii) any guaranteed bonuses, and (iii) any sign-on bonuses, but excluding any stock options, fringe benefits, and other non-cash compensation.
   This initial amount is payable within 30 days of the portfolio manager, trader, senior research analyst, senior quant analyst or senior executive's start date.

   b) If the candidate's compensation for his/her first twelve months of active trading exceeds $200,000 (two hundred thousand US Dollars), a final amount equal to twenty-five percent (25%) of all compensation received by or payable to the portfolio manager, trader, senior research analyst, senior quant analyst or senior executive, including all incentive fees related to realized and unrealized performance received by or payable to the portfolio manager, trader, senior research analyst, senior quant analyst or senior executive during the first twelve (12) months of live, active trading, <u>less the initial amount</u>.

This amount is payable within thirty (30) days after the twelve (12) month anniversary of the commencement of live, active trading.

2. **Junior Research Analyst, Junior Quantitative Analyst Positions:**

    For candidates that are referred to [Company] by Navesink Int[al] to fill junior research analyst or junior quantitative analyst positions, [Company] shall pay Navesink Int[al] 25% of the placed candidate's total first year compensation as follows:

    a) An initial amount ("initial amount") equal to twenty-five percent (25%) of all compensation(s) to be received by the junior research analyst or junior quantitative analyst during the first twelve (12) months following start date, including (i) base salary, (ii) any guaranteed bonuses, and (iii) any sign-on bonuses, but excluding any stock options, fringe benefits, and other non-cash compensation.
    This initial amount is payable within 30 days of the junior research analyst or junior quantitative analyst's start date.

    b) A final amount equal to twenty-five percent (25%) of all compensation received by the junior research analyst or junior quantitative analyst , but excluding stock options, fringe benefits and other non-cash compensation, paid or payable to the junior research analyst or junior quantitative analyst during the first twelve (12) months of employment, <u>less the initial amount</u>. This amount is payable within thirty (30) days after the twelve (12) month anniversary of start date.

3. **Technology or Support Positions:**

    For candidates that are referred to by Navesink Int[al] to fill technology and support positions, [Company] shall pay Navesink Int[al] a fee equal to twenty percent (25%) of the placed candidate's first year's guaranteed cash compensation, within 30 days of the candidate's start date.

4. **Operation, Accounting, Middle, Back Office Positions**

    For candidates that are referred to by Navesink Int[al] to fill Operation, Accounting Middle and Back office positions, [Company] shall pay Navesink Int[al] a fee equal to twenty percent (25%) of the placed candidate's first year's guaranteed cash compensation, within 30 days of the candidate's start date.

## C. ELIGIBILITY

The compensation is payable only when:

a. Navesink Int[al] has referred a candidate to [Company] for a specific position who is eligible, by law, for employment in the candidate's employment jurisdiction and

b. [Company] hires the candidate within twelve (12) months of Navesink Int[al] 's referral.

Navesink Int[al] hereby re-affirms its policy of submitting only qualified applicants without regard to race, religion, national origin, sex or age.

## D. REFUND

If the candidate resigns or is terminated for any reason other than lack of work within 90 days of start date, Navesink Int[al] shall refund [Company] a portion of the fee paid by [Company]. That portion shall be computed as follows.

a. within ninety (30) days after his/her start date, [Company] shall be refunded 100% of the fee.

b. within thirty-one (31) days and sixty (60) days after his/her start date, [Company] shall be refunded 75% of the fee.

c. within sixty-one (61) and ninety (90) days after his/her start date, [Company] shall be refunded 50% of the fee.

If the employee us laid off by [Company] due to lack of available work, no refund shall be made.

[Company] may agree that Navesink Int$^{al}$ provides a suitable replacement candidate instead of a refund.

Any monies shall be paid within thirty (30) days of written notification by [Company] to Navesink Int$^{al}$ of its duty to refund.

## E. Confidentiality

Navesink Int$^{al}$ acknowledges that it or its employees may, in the course of performing its responsibilities under this agreement, be exposed to or acquire information which is proprietary to or confidential to [Company], its affiliated companies or third parties to whom [Company] has a duty of confidentiality. Any and all non-public information of any form obtained by Navesink Int$^{al}$ or its employees in the performance of this agreement shall be deemed to be confidential and proprietary information. Navesink Int$^{al}$ agrees to hold such information in strict confidence and not to disclose such information to third parties or to use such information for any purpose other than the provision of services [Company]. This provision shall survive termination of this agreement.

With respect to the disclosure of a placed candidate's highly sensitive gross trading profit information, such disclosure shall be made only to principals of Navesink Int$^{al}$.

## F. Non-Recruitment

Navesink Int$^{al}$ agrees that during the term of this agreement, Navesink Int$^{al}$ may not, without prior written consent of [Company], recruit any employee of [Company] or its affiliated companies for a period of one year.

## G. Term and Termination

This agreement shall commence as of [Date] and shall continue thereafter until terminated by either party upon a 90 day written notice. This agreement shall terminate automatically in the case of bankruptcy or insolvency of either party.

The fee and confidentiality obligations shall survive any termination.

## H. Jurisdiction

This agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to its conflict of laws provisions or either party's actual state or country of residence. Any claims, legal proceeding or litigation arising in connection with this Agreement shall be brought in either New York Supreme Court in the County of New York, New York, or the United States District Court in the Southern District of New York, and both parties hereby consent to the jurisdiction of such courts.

Each of the undersigned persons represents and certifies that he or she is authorized to sign this Agreement on behalf of his or her respective party.

**IN WITNESS WHEREOF**, each of the parties has caused this agreement to be duly executed by its authorized representative.

[Company]                                                    Navesink International LLC

Name:                                                        Name:
Title:                                                       Title:
Date:                                                        Date: